CHESTER CLAFLIN & others *vs.* ERASTUS BEACH & others.

The provisions of *St.* 1838, *c.* 163, § 19, respecting proceedings against a debtor, on the application of a creditor, cannot be enforced against a debtor who is not a resident in the Commonwealth when such application is made.

Several creditors attached property of their debtor, and he thereupon removed from the Commonwealth, carrying with him all his property which was not attached, and became a resident in another State, before the term of the court to which the writs, on which his property was attached, were returnable: He never again resided within the Commonwealth, nor did he dissolve the attachments on or before the last day of said term: On an application made by other creditors within ninety days of the end of said term, a master in chancery issued a warrant directing a messenger to take possession of such debtor's estate, and assignees of his estate were afterwards chosen. *Held*, that the master in chancery had no jurisdiction of the case, and that the proceedings before him did not dissolve the attachments.

THIS was a petition of certain creditors of Roswell Canfield, who were aggrieved by proceedings against him under *St.* 1838, *c.* 163, and prayed the court, as a court of chancery, to make such orders and decrees in the premises, as law and justice might require.

The petitioners set forth that they were severally creditors of said Canfield, who was formerly of Sandisfield in this county, and that before the 20th of March 1841, they had severally secured their claims against him, by attachments of his prop-

33 *

erty : That said Canfield, on or about said 20th of March, left this Commonwealth, and has never since returned, but then became, and has ever since been, a resident in Homer, in the State of New York : That long after said attachments were made, and after said Canfield had ceased to be a resident in this Commonwealth, viz. on the 5th of July 1841, certain other of his creditors, " because of attachments made and pending on his estate," petitioned a master in chancery, under *St.* 1838, *c.* 163, for a warrant appointing a messenger to take possession of said Canfield's estate ; which warrant said master in chancery issued on that day : That said warrant had been executed ; that Erastus Beach and Lemuel K. Strickland had been appointed assignees of said Canfield's estate ; and that said master n chancery and said assignees claimed authority to proceed, under said statute, to dispose of said Canfield's estate, and thereby to dissolve the said attachments made by the petitioners.

This petition was presented at the last September term, when the court ordered notice thereof to be given to all persons interested therein. After the service of the order of notice, the case was submitted to the court upon the following facts, agreed upon by the petitioners, and the said Beach and Strickland, assignees of said Canfield :

Before said Canfield left Sandisfield, as stated in said petition, he was a resident there, doing business ; on the 26th and 27th of February 1841, the petitioners and others attached all the property of said Canfield, both real and personal, that could be come at to be attached, and he had notice of such attachments, and gave the key of his store to the attaching officer : About the 20th of March next following, said Canfield left the Commonwealth, and took with him all his effects which were not attached, and his family left said Sandisfield in the montn of May 1841 : At the June term 1841, of the court of common pleas in this county, the attorney of said Canfield appeared in the several actions against him, in which said attachments were made, and caused the same to be continued until the next term, when said attorney again appeared in said actions : A petition for an assignment, under *St.* 1838, *c.* 163, § 19, was made

within ninety days after the last day of the term to which the processes, on which said attachments were made, were returnable ; and upon this petition a warrant issued, assignees were chosen, and all the proceedings had on said petition were in due form of law, if an assignment could be made under such circumstances ; and the facts stated in the petition were correct.

The counsel presented written arguments to the court, in January 1842.

*Sumner,* for the petitioners.

*Filley, Byington & Strickland,* for the respondents.

DEWEY, J. By the provisions of *St.* 1838, *c.* 163, § 18, this court has a general superintendence and jurisdiction, as a court of chancery, of all cases arising under that statute, and the power is conferred on it, upon the filing of a bill, petition, or other proper process, by any party aggrieved by any proceedings under the statute, to hear and determine the same, and to make such order or decree therein as law and justice shall require.

The petitioners, as creditors of Roswell Canfield, and claiming to have acquired a lien upon his estate by attachment on mesne process, now ask the court to set aside and stay all further proceedings in a matter arising under § 19 of the aforesaid statute, and by virtue of which a warrant has been issued by a master in chancery, directing a messenger to take possession of said Canfield's estate, and such further proceedings have been had, that assignees of his estate have been appointed, and the estate is in progress of settlement and distribution, as an insolvent estate.

The objection, taken to the validity of the proceedings before the master in chancery, is a want of jurisdiction. This want of jurisdiction is supposed to be shown by the facts appearing in the case stated by the parties ; to wit, that said Canfield, prior to the institution of the proceedings before the master, had left the Commonwealth, abandoning his domicil here, and taking with him his family and all his estate, except that which was attached by the petitioners. The authority to take such jurisdiction over the property of a debtor, operating to dispossess

him of all control over his estate, as well as to dissolve all liens of creditors by attachment of his estate, must be supported by some clear statute enactment, before we can give effect to it. It is contended that sufficient authority therefor is found in *St.* 1838, *c.* 163, § 19 ; and it is conceded that if the proceedings were unauthorized by this statute, they have no legal validity.

We cannot adopt the construction contended for by the respondents, merely because we may suppose the legislature would have thus provided, if the precise case now before the court had been presented distinctly to their consideration. Our adjudication must necessarily be made with reference to the provisions of law, as they now exist ; and if these shall not be found adequate to secure the general purposes of the statute, it will be for the legislature to supply, by further enactments, any defect which may be found in the existing laws upon this subject.

The question is, whether the provisions of § 19 of *St.* 1838, *c.* 163, can be enforced against any other person than an actual resident within the Commonwealth at the time of the making of the application to the master in chancery. Section 1st, which authorizes proceedings in insolvency upon the voluntary application of the insolvent, expressly limits the application to cases of debtors '' residing in this Commonwealth.'' The 19th section, which authorizes proceedings against an insolvent debtor, upon the application of a creditor, although using more general words in the introductory part of the section, yet taken together is equally restrictive, as it provides that the proceedings shall be instituted by an application of a creditor '' to the judge of probate, or to any master in chancery, for the county in which the said debtor resides.'' All the subsequent proceedings and acts to be done on the part of the debtor, and the power of the master in chancery to require his attendance, and to compel a disclosure, with the further power of commitment, upon the debtor's refusal to appear before him, clearly indicate that in all cases arising under the statute, the debtor is supposed to be within the Commonwealth, and amenable to its process.

The position assumed by the respondents is, that after an attachment of property, the debtor cannot, by a removal from

the Commonwealth, avoid the effect of the statute, if a proper case arises for its future application by reason of his neglecting to dissolve an attachment of his estate, made while he was a resident. It is said that a different rule of construction would enable the debtor, by means of such removal, to secure preferences to the attaching creditors, and thus virtually to defeat the objects of the statute. It may be so ; but this would not authorize us to extend the provisions of the statute beyond the cases fairly embraced within it.

It is also urged, that the statute contemplates two distinct objects, viz. the distribution of the estate of the insolvent debtor, and his discharge ; and that although the latter may not be effected by means of such proceedings against a non-resident, who fails to comply with the various requisitions of the statute on his part, yet it may well have its full force and effect in effectuating a *pro ratâ* distribution of his property which remains here among his creditors. It is undoubtedly true that cases may occur, where the latter object may be accomplished, although the debtor has removed without our jurisdiction. Such would be the effect of a removal of the debtor out of the Commonwealth, after the actual filing of a petition and the institution of proceedings under the statute, accompanied with a neglect of the debtor to attend the meetings of the creditors, when ordered so to do, or his omission to perform any other acts legally required of him. We by no means suppose that such removal, under the circumstances last stated, would oust the master in chancery of his jurisdiction, or prevent the distribution of the debtor's effects among his creditors. In the case last supposed, the jurisdiction would have attached while the debtor resided in the Commonwealth. But in a case like that now before the court, the object of compulsory proceedings in insolvency in a great measure fails. The jurisdiction, at most, extends only to the property held under the attachment of the creditors, who are the complainants before us. The debtor had removed, carrying with him all his other property, which might embrace a large proportion of his estate ; so that instead of a distribution of the whole of his property, as in the case of a resident debtor, the distribution will be only of his attached property.

Upon a careful consideration of the provisions of the statute on this subject, we do not think that its language will bear a construction which will include the cases of persons resident here at the time an attachment of their property is made, but who have changed their domicil, removing to another State, taking with them all their property not under attachment, before the entry of the action in which such attachment was made. It is not the attachment-of the goods and estate of a defendant in an action, that subjects him to this proceeding in insolvency ; but it is his not dissolving the attachment on or before the last day of the term of the court to which the process is returnable, which authorizes an application by his creditors for this compulsory proceeding. When such event has occurred, his creditors may apply to a " master in chancery for the county in which the said debtor resides." But in the case before us, the debtor did not reside in the county of Berkshire, at the time of making the application to the master in chancery. The master in chancery, therefore, had no jurisdiction of the case, and the proceedings before him were unauthorized, and cannot have the effect to discharge the lien acquired by the petitioners under their attachment.

The court will therefore order that all further proceedings before the master in chancery be stayed, and that the assignees be enjoined from interfering with the property attached by the petitioners.